# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**THOMAS W. KOEPPEN,**

   Petitioner,

 v.                       Case No. 04-C-1113

**MATTHEW J. FRANK,**

   Respondent.

## DECISION AND ORDER ON THE
## PETITION FOR A WRIT OF HABEAS CORPUS

  Thomas W. Koeppen ("Koeppen") is a prisoner incarcerated pursuant to a state court judgment entered on March 2, 1998. Proceeding pro se, he seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 8, 2005, upon screening Koeppen's petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases, this court recommended that Koeppen's petition be denied and this cases dismissed. Koeppen filed an objection to this recommendation and the Honorable J.P. Stadtmueller modified this court's recommendation to permit Koeppen to proceed on the single ground that he was not convicted by a unanimous jury. On April 7, 2005, the respondent answered Koeppen's petition and this case was reassigned to this court upon all parties consenting to the full jurisdiction of a magistrate judge. Koeppen filed a motion requesting the court order the respondent to provide additional records, which the court denied on August 31, 2005. The pleadings on Koeppen's petition are closed and the matter is ready for resolution.

## FACTS

The following facts are contained in the court of appeals' published decision in Koeppen's case:

> On January 3, 1997, at 12:30 a.m., City of New Berlin Police Officer Gregory Godec and a fellow officer were dispatched to the Koeppen residence after dispatch received a 911 call that a domestic dispute was in progress. Dispatch also revealed to Godec that Koeppen had been drinking, an act that would violate Koeppen's probation conditions. Because of a previous police encounter at Koeppen's house, Godec was familiar with the house's layout and wanted to prevent Koeppen from going into the basement, so Godec went to the house's back door, which was closest to the basement stairs. Meanwhile, Koeppen was still talking to dispatch on the phone. Dispatch told him to meet the officers at the back door. He refused and stated that he was in the back room. Koeppen's wife, Jeri, went to the back door to meet the officers.
>
> Jeri informed the officers that Koeppen was in the back room with a knife. After exiting the house, she told the officers that earlier in the evening Koeppen had been drinking from a twenty pack of Blatz Light and that he was on some medication that made him act strangely.
>
> The officers entered the house and proceeded down the hallway to further investigate the emergency. Godec noticed several beer cans beside the recliner and strewn around the house. The officers took positions behind room walls where they could maintain visual observation of the back room and hallway. The officers could still hear Koeppen speaking with dispatch on the phone and noticed that his speech was slurred. They began to initiate conversation with him. They asked him if he had a knife inside the room with him. Koeppen responded, "Yes." The officers maintained a dialogue with him for almost two hours. The officers encouraged Koeppen to slide the knife under the door and exit the room with his hands in the air. Instead of doing so, Koeppen wanted to know why the officers were in his house and with which statute number he was being charged. He also stated, "Don't come towards me" on several occasions.
>
> Godec repeated the request that Koeppen throw the knife out into the hallway. Koeppen replied, "Which one?" Godec queried him about how many knives he had and how big they were. Koeppen replied, "I have a knife. I don't have to tell you how big it is. I have a knife." Godec testified that Koeppen made similar statements approximately ten times during the two-hour dialogue. Godec asked if there was anything the officers could do or say to get him to come out of the room. When Koeppen responded negatively, Godec, determining that they had reached a [**534] stalemate, put in a request for the city's SWAT team.
>
> When the SWAT team arrived, it took over negotiations, and Godec and the other officers exited the house. The SWAT team announced its presence to Koeppen and asked him what he planned to do with the knife. Koeppen responded in the same fashion as before and another circular dialogue ensued between he and the team. Because a compromise could not be reached and Koeppen still refused to leave the room, the SWAT team decided to deploy a grenade containing a chemical agent spray,

oleoresin capsicum (OC), into the hallway outside the room. While wearing gas masks, the team waited for a response from Koeppen such as coughing or wheezing. No response came. When Koeppen failed to come out of the room when requested to do so by the team, the team deployed a second grenade.

Again, no response came from Koeppen. It was later revealed that Koeppen had avoided the grenades' chemical spray by opening a window and pressing his face against the screen. With ballistic shields and full SWAT gear, the team made a tactical approach down the hallway. Arriving at the doorway, the lead SWAT team member demanded that Koeppen show him his hands. Koeppen responded by playing games with his hands and slipping them behind a curtain. After five minutes of this behavior, the team deployed a distractionary device, which created a temporary sensory overload with a loud bang and a bright flash. During the fifteen seconds that Koeppen's sensory perceptions were off balance from the device, the team entered the room and apprehended him. Koeppen physically resisted being handcuffed. A knife was found lying near him.

Koeppen was charged with failing to comply with an officer while being taken into custody with a repeater enhancer pursuant to Wis. Stat. §§ 946.415 and 939.62(1)(b). After the jury returned a guilty verdict on this count, the court sentenced Koeppen to four years of imprisonment.

State v. Koeppen, 2000 WI App 121, ¶¶ 3-9, 237 Wis. 2d 418, 614 N.W.2d 530 (footnotes omitted).

Koeppen was charged in an information that alleged that Koeppen "did refuse to comply with an officer's lawful attempt to take him into custody, and remains in a place and through action or threat, attempts to prevent officers from taking him into custody, and further remains armed with a dangerous weapon." Id. at ¶ 11. Koeppen challenged this disjunctive statement of the elements of the crime and filed a motion requesting that the state specify which of the alternative courses of conduct it intended to argue, specifically, whether Koeppen prevented officers from taking him into custody by way action or threat. Id. at ¶ 12. At the jury instruction conference, the court ruled that the state's charge could remain in the disjunctive and the jury would be instructed with disjunctive language also. Id. at ¶ 13.

The jury instruction further complicated the issue because it included more disjunctive phrases than the information. The crime was explained to the jury as:

If you are satisfied beyond a reasonable doubt that the defendant intentionally refused to comply with an officer's lawful attempt to take him into custody, that he *retreated or remained* in a

> building or place and through *action or threat* attempted to prevent the officer from taking him into custody and, further, that he *remained or became armed* with a dangerous weapon *or threatened the use* of a dangerous weapon regardless of whether he has a dangerous weapon, you should find the defendant guilty.

Id. at ¶ 14 (emphasis added by the court of appeals).

Applying Wisconsin case law and the Wisconsin Constitution, the court of appeals rejected Koeppen's contention that the disjunctive jury instructions denied him the right to have a jury unanimously agree on which acts he committed, deprived him of his right to a unanimous verdict, and allowed the jury to find him guilty on evidence less than a reasonable doubt. Id. at ¶¶ 14-15. The court held that the disjunctive phrases merely detailed specific ways in which the crime may be committed; the jury was necessarily unanimous on the ultimate issue of Koeppen's guilt or innocence. See id. at ¶¶ 15, 24. On September 12, 2000, the Wisconsin Supreme Court denied review. (Ans. Ex. G.)

**STANDARDS OF REVIEW**

Where the state court adjudicates the merits of a petitioner's claim, this court may grant habeas corpus relief if the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

As the Supreme Court explained in Williams v. Taylor, § 2254(d)(1) establishes two independent grounds on which a federal court can grant habeas corpus relief: (1) if a state court decision is "contrary to" clearly established federal law, as determined by the Supreme Court; or (2) if a state court decision involves an "unreasonable application" of clearly established federal law, as determined by the Supreme Court. 529 U.S. 362, 404-05 (2000); see also Washington v. Smith, 219 F.3d 620, 627-28 (7th Cir.2000). The "contrary to" standard requires a state court decision to be

"substantially different from the relevant precedent of [the Supreme Court]." Williams, 529 U.S. at 405. For example, a state court decision applying a rule that contradicts the governing law set forth by the Supreme Court would qualify, as would a decision that involves a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result. Id. at 405-06. By contrast, a state court decision that draws from Supreme Court precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the "contrary to" standard, no matter how misguided the decision's ultimate conclusion. Id. at 406-07.

Under the "unreasonable application" prong of (d)(1), relief may be granted if the petitioner shows that, despite identifying the correct rule of law, the state court unreasonably applied it to the facts of the case. Williams, 529 U.S. at 404. An unreasonable application of federal law, however, is different from the incorrect or erroneous application of federal law. Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001) (citing Williams, 529 U.S. at 410). A federal court simply disagreeing with the state court decision does not warrant habeas relief-the decision's application of Supreme Court precedent must be so erroneous as to be objectively unreasonable. Middleton v. McNeil, 541 U.S. 433, 436 (2004); Yarborough v. Gentry, 540 U.S. 1, 5 (2003).

Under § 2254(d)(2), relief may be had where the petitioner demonstrates that the state court made an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Here again, an unreasonable determination is more than a determination that is simply incorrect or erroneous. Moreover, state court factual determinations are presumed correct, and the petitioner has the burden of rebutting the presumption of correctness by "clear and convincing evidence." § 2254(e)(1). Rice v. Collins, 546 U.S. 333, 339 (2006) (citing Miller-El v. Dretke, 545 U.S. 231, 240 (2005)).

With the § 2254(d) and (e)(1) standards in mind, the court will now turn to the issue raised by the petitioner.

**ANALYSIS**

Koeppen asserts a single ground for relief in his petition—that he was not convicted by a unanimous jury.

The respondent argues that Koeppen's petition must be denied because: (1) there is no federal constitutional right to a unanimous jury verdict in non-capital state court criminal proceedings, (Resp. Br. at 6-8); (2) Koeppen has procedurally defaulted any federal due process claim by not presenting it to the state courts, (Resp. Br. at 8-14); (3) there was no due process violation, (Resp. Br. at 14-21); and (4) the decision of the court of appeals was not an unreasonable application of federal law as determined by the United States Supreme Court, (Pet. Br. at 22-27).

The court need not discuss and resolve each and every of the respondent's arguments; rather, the court finds that even if Koeppen was able to surmount all of the respondent's other arguments, he is not entitled to relief on the merits of his petition.

The Supreme Court has been clear in holding that there is no Constitutional requirement that a jury agree upon the means by which a defendant committed a crime. Schad v. Arizona, 501 U.S. 624, 631-32 (1991). When a state criminal law sets forth different courses of conduct or states of minds as alternative means of committing a single offense, it is a question of statutory interpretation as to whether disjunctive alternatives in a statute set forth distinct crimes or merely alternative means of committing the same crime. Id. at 636-38. Interpretation of the intent of state legislatures is left primarily to state courts. Id. at 636-38.

The court of appeals interpreted the intent of the state legislature by reviewing the legislative history of the bill and determined that the legislature intended to outline in the statute numerous

alternative ways for an individual to commit a single crime. 2000 WI App 121, ¶¶ 16-21. The court then determined that the disjunctive elements were conceptually similar because the same factual theory or concept supports either alternative conduct, and thus the state was not required to prove and jury unanimity was not required as to the question of specifically how Koeppen committed the crime. Id. at ¶¶ 22-24.

This "conceptual similarity test" was discussed by the Court in Schad, but it is not the federal test for determining whether a state statute is constitutional. 501 U.S. at 635-37. Rather, a state statute satisfies federal constitutional requirements if it meets the Due Process Clause's demands of rationality and fundamental fairness. Id. at 637.

Having reviewed the record in this matter, the court is unable to say that the Wisconsin Court of Appeals' interpretation of the disjunctive aspects of the statute as simply alternative methods for an individual to commit a single crime (thus meaning that the jury need not unanimously agree as to specifically how Koeppen committed the crime) offended the Due Process Clause's demands of rationality and fundamental fairness. The statute was sufficiently specific so that a person of common intelligence would not be required to guess as what was proscribed, and a person charged under the statute would be able to understand the charges against him. Therefore, Koeppen is not entitled to federal habeas relief and his petition must be denied.

**IT IS THEREFORE ORDERED** that Koeppen's petition for a writ of habeas corpus is denied. The clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of October, 2007.

BY THE COURT:

s/Aaron E. Goodstein
AARON E. GOODSTEIN
U.S. Magistrate Judge